UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NGUYEN VAN QUANG,

Petitioner,

v.

CHRISTOPHER J. LAROSE, et al.,

Respondents.

Case No.:  3:26-cv-02236-RBM-AHG

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[Doc. 1]**

Pending before the Court is Petitioner Nguyen Van Quang's ("Petitioner") Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition").  (Doc. 1.)  For the reasons set forth below, the Court **GRANTS** the Petition.

## I.  BACKGROUND

**A.  Factual Background**

Petitioner is a citizen of Vietnam who entered the United States on July 29, 2025 without inspection.  (Doc. 4 at 2 (citing Doc. 4-1 at 3–4).)  Petitioner was determined to be inadmissible under Immigration and Nationality Act § 1182(a)(7)(A)(i)(I) and § 1182(a)(6)(A)(i) and was originally processed for expedited removal.  (*Id.*)  But on August 28, 2025, the immigration judge vacated the asylum officer's negative credible fear

1

finding. (*Id.*) Petitioner was then issued a Notice to Appear, which initiated removal proceedings against him under 8 U.S.C. § 1229a. (*Id.*)

Petitioner applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). (*Id.*) Petitioner's first master calendar hearing was scheduled for September 22, 2025. (*Id.*) Respondents represent that "[a]fter five delay requests by [Petitioner] to obtain counsel and to prepare his claims . . . a merits hearing was set for May 5, 2026, but then vacated and reset as a master calendar hearing on April 28, 2026, for the purpose of allowing Petitioner more time to gather evidence." (Doc. 6 at 1.) At that hearing, the final merits hearing was set for May 26, 2026. (*Id.*) Accordingly, Petitioner's removal proceedings remain pending.

**B.     Procedural Background**

Petitioner, proceeding *pro se*, filed the Petition on April 8, 2026. (Doc. 1.) Shortly thereafter, the Court set a briefing schedule. (Doc. 2.) Respondents filed their Return to Petition for Writ of Habeas Corpus on April 24, 2026. (Doc. 6.) Petitioner was authorized to file a reply on or before May 11, 2026, but did not file one. On May 13, 2026, the Court ordered Respondents to file a status report addressing questions relevant to the Court's prolonged detention analysis. (Doc. 5.) On May 18, 2026, Respondents filed that Status Report. (Doc. 6.)

## II.     LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

3:26-cv-02236-RBM-AHG

### III.    DISCUSSION

Petitioner claims that his continued detention without a bond hearing has become unreasonably prolonged in violation of the Fifth Amendment's Due Process Clause. (Doc. 1 at 6–7.)  Respondents argue that Petitioner's detention is statutorily mandated by 8 U.S.C. § 1225(b)(1) and that even if the Court considered the merits of Petitioner's claim, Petitioner's detention has not become unreasonably prolonged under the relevant test. (Doc. 4 at 3–10 (discussing factors under *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022)).)  The Court agrees with Petitioner that an unreasonably prolonged detention without a bond hearing violates due process, and that Petitioner's detention has become unreasonably prolonged.

**A.     Due Process**

Respondents argue that "inadmissible arriving noncitizens seeking initial entry into the United States . . . have no due process rights 'other than those afforded by statute.'" (Doc. 4 at 7 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).)

"Following the Supreme Court's decision in *Thuraissigiam*, some district courts have adopted Respondents' reasoning to dismiss or deny habeas petitions in the context of arriving aliens subject to mandatory detention under Section 1225(b)(1)."  *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1110 (S.D. Cal. 2025); *see Mendoza-Linares v. Garland*, Case No.: 21-cv-1169-BEN (AHG), 2024 WL 3316306, at *2 (S.D. Cal. June 10, 2024) ("Petitioner has no Fifth Amendment right to a bond hearing pending his removal proceedings."); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 579 (W.D.N.Y. 2021) (same); *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 667 (S.D. Tex. 2021) (same).

"Most courts have ruled otherwise." *Gao*, 805 F. Supp. 3d at 1110 (collecting cases); *accord Abdul-Samed v. Warden of Golden State Annex Det. Facility*, Case No. 1:25-cv-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for citizens detained under 8 U.S.C. § 1225(b), . . . essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without

3

a bond hearing, will—at some point—violate the right to due process."); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever."). The Court thus "joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process." *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020).

Respondents also argue that *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), establishes that arriving noncitizens subject to a mandatory detention scheme, regardless of the length of their detention, never become entitled by the Due Process Clause to a bond hearing. (Doc. 4 at 5–7.) The Court disagrees. *Mezei* involved a noncitizen who had been "permanently excluded from the United States on security grounds but [who was] stranded in his temporary haven on Ellis Island because other countries [would] not take him back." 345 U.S. at 207. "In 1950, the Attorney General determined, pursuant to emergency regulations [ ] based on certain confidential information, [that] the noncitizen should be excluded from the United States 'for security reasons.'" *Lastin v. Warden*, Case No.: 26-cv-974-RSH-DDL, 2026 WL 575902, at *3 (S.D. Cal. Mar. 2, 2026) (discussing *Mezei*). The Supreme Court rejected the noncitizen's constitutional challenge, citing "considerations" of "danger to the national security."

> Thus we do not think that respondent's continued exclusion deprives him of any statutory or constitutional right. It is true that resident aliens temporarily detained pending expeditious consummation of deportation proceedings may be released on bond by the Attorney General whose discretion is subject to judicial review. By that procedure aliens uprooted from our midst may rejoin the community until the Government effects their leave. *An exclusion proceeding grounded on danger to the national security, however, presents different considerations;* neither the rationale nor the statutory authority for such release exists. *Ordinarily to admit an alien barred from entry on security grounds nullifies the very purpose of the exclusion proceeding . . . .*

*Mezei*, 345 U.S. at 215 (citations omitted and emphasis added).

4

The Court agrees with those courts that distinguish the constitutional holding in *Mezei* as addressing the national security considerations presented in that case. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003) ("[T]he *Mezei* Court explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security."); *Lett v. Decker*, 346 F. Supp. 3d 379, 386 (S.D.N.Y. 2018) ("*Mezei* may compel the conclusion that arriving aliens already excluded on national security grounds are not entitled to a bond hearing prior to their arranged deportation. However, *Mezei* does not compel the categorical conclusion that all arriving aliens may be subject to prolonged confinement without a bond hearing."); *Kydyrali*, 499 F. Supp. 3d at 772 (finding *Mezei* inapposite to the issue of whether prolonged detention without a bond hearing violates due process); *Rash v. LaRose*, Case No.: 26-cv-00008-LL-DEB, 2026 WL 249324, at *4 (S.D. Cal. Jan. 30, 2026) (same). "Here, in contrast, neither the Attorney General nor any other government component has made a determination that Petitioner should be excluded on grounds of national security; Petitioner is not seeking to circumvent such a determination. Petitioner is instead seeking a bond hearing." *Lastin*, 2026 WL 575902, at *3. The Court thus concludes that it may consider whether Petitioner's detention has become unconstitutionally prolonged.

**B.    Prolonged Detention**

To determine whether Petitioner's detention has become unconstitutionally prolonged under § 1225(b), the Court applies the six-factor balancing test set forth in *Kydyrali*. *See* 499 F. Supp. 3d at 773. Under this test, the Court considers:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Gao*, 805 F. Supp. 3d at 1111.

As to the first factor, which has been described as "the most important," *Banda v.*

5

*McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019), Petitioner has been detained for about 10 months. (*See* Doc. 4 at 2.) Respondents argue that this length "is shorter than many of the lengths of detention where the [c]ourts in this district have found detention to be unreasonably prolonged." (*Id.* at 9.) As another court in this District noted, though, "[c]ourts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable." *Abdul Kadir v. Larose*, Case No.: 25cv1045-LL-MMP, 2025 WL 2932654, at *5 (S.D. Cal. Oct. 15, 2025) (collecting cases and finding that a nearly 13-month detention weighed in favor of the petitioner). The Court finds that this factor favors Petitioner.

As to the second factor, Petitioner's final merits hearing is scheduled for May 26, 2026, and the outcome of that hearing, along with the amount of time it would take to resolve any appeal, is unknown. (Doc. 6 at 1–2.) The Court finds that the "undetermined, but likely significant, period of mandatory detention through the appeals process" weighs in favor of Petitioner. *Gao*, 805 F. Supp. 3d at 1111; *accord Abdul Kadir*, 2025 WL 2932654, at *5; *Masood v. Barr*, Case No. 19-cv-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) ("The BIA appeal . . . [is a] perfectly legitimate proceeding[] he is legally entitled to pursue," and the respondents "cannot predict with any degree of confidence when the BIA appeal will be resolved," which "could lead to further proceedings that might take up many more months, or even years.").

As to the third factor, "[t]he more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Petitioner has been detained at Otay Mesa Detention Center, the conditions of which multiple courts have found "indistinguishable from penal confinement." *Kydyrali*, 499 F. Supp. 3d at 773 (citation omitted). Therefore, this factor weighs in Petitioner's favor.

The fourth and fifth factors weigh against Petitioner because it appears that his removal hearings have been delayed or continued mainly to allow him to seek counsel and prepare for his removal case. (*See* Doc. 4-1 at 16–17.) The sixth factor is neutral because

Petitioner's applications for asylum, withholding of removal, and CAT relief have not yet been adjudicated.  (*See* Doc. 6 at 1–2.)

Three factors, including "the most important one," weigh in Petitioner's favor, and the two related delay factors weigh against him.  Therefore, the Court finds that Petitioner's detention under § 1225(b) has become unreasonably prolonged and that due process requires that he be provided with a bond hearing.

### IV.   CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**.  Respondents are **ORDERED** to arrange an individualized bond hearing for Petitioner before an immigration judge within **fourteen (14) days** of entry of this Order to determine whether his continued detention is warranted.  Respondents shall bear the burden of establishing, by clear and convincing evidence,[1] that Petitioner poses a danger to the community or a risk of flight.  If no hearing occurs **within fourteen (14) days** of entry of this Order, Petitioner shall be released from Respondents' custody.  On or before **June 19, 2026**, Respondents **SHALL FILE** a status report indicating whether and when Petitioner received a bond hearing, and the outcome of that bond hearing.

**IT IS SO ORDERED.**

DATE:  May 19, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[1]  *See Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1095 (S.D. Cal. 2025) ("Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents must justify her continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released.") (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018) (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond").

3:26-cv-02236-RBM-AHG